John A. Kelly, Appellant, v. John A. Carroll and James Carroll, trading as John A. Carroll & Brother, Appellees.

## Gen. No. 26,771.

1. CUSTOMS AND USAGES—*how custom established.* A custom cannot be established by one instance but must be proved to be so general, uniform and frequent as to warrant an inference that the party against whom it is asserted had a knowledge of it and contracted with reference to it.

2. CUSTOMS AND USAGES—*number of witnesses required to establish custom.* A custom should be established by the testimony of several witnesses.

3. CUSTOMS AND USAGES—*knowledge of person sought to be affected by custom.* Although real estate boards and renting agencies may by their rules have sought to establish a custom of charging, upon termination of their agencies 2½ per cent commission upon the unexpired terms of all leases made or renewed by them, such custom cannot be made applicable to a landlord unless it is shown that he had actual knowledge of the existence of the custom or that he had had previous transactions or a course of dealing of such a nature that knowledge on his part of the existence of such custom might be presumed.

4. CUSTOMS AND USAGES—*what is operation of custom.* When the existence of a custom has been proved, it has the force of law within the sphere where established and enters into the contracts of those within that sphere who have knowledge of its existence.

5. CUSTOMS AND USAGES—*how presumption of knowledge of custom may be shown.* A presumption of knowledge of a custom may be shown by facts or circumstances.

6. Customs and usages—*insufficiency of evidence to establish custom of rental agents.* In an action for money withheld by rental agents, *held* that the evidence was insufficient to establish a custom for such agents upon termination of their agency to charge a commission upon the unexpired terms of all leases made or renewed by them.

Appeal from the Municipal Court of Chicago; the Hon. Asa G. Adams, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1921. Reversed with finding of facts and judgment here for $280.68. Opinion filed December 30, 1921. Rehearing denied January 10, 1922.

Edward N. Sherburne, for appellant; John R. McCabe, of counsel.

William J. Pringle, Edwin Terwilliger, Jr. and H. E. Pieruccini, for appellees.

Mr. Justice Morrill delivered the opinion of the court.

The statement of claim charges that the defendants are indebted to plaintiff in the sum of $371.40, being money alleged to have been wrongfully withheld from plaintiff, consisting of rents collected by defendants as plaintiff's agents. The affidavit of merits does not deny the withholding of the money, but claims that it is held by defendants in part payment of commissions earned by them and for expenditures incurred by them on behalf of plaintiff. Defendants filed a claim of set-off, alleging that on May 1, 1918, they made a contract with plaintiff, who was the owner of several apartment buildings, by virtue of which it was agreed that defendants would act as plaintiff's agents in the collection of the rentals of said buildings for the usual and customary compensation and under the general usage and custom prevailing among landlords and renting agents; that in accordance with such custom defendants were to receive 3 per cent of all collections made, and in case the business of collecting

the rent should be withdrawn by plaintiff from defendants, then in such case defendants were to be allowed a customary and usual commission of 2½ per cent for the rental during the unexpired terms of any lease or leases which defendants had renewed during such agency; that there was due to defendants as commission on uncollected rentals for the unexpired terms of such leases the sum of $391.63, and on account of cash expenditures the sum of $90.72. Plaintiff's affidavit of merits to the claim of set-off admits ownership of the property and the making of a contract of agency between the parties, but denies that there was or is a general usage or custom among landlords and renting agents whereby in case the agency for the collection of rents is withdrawn from the agents, they are in such case entitled to 2½ per cent commission upon the rentals for the unexpired term of any lease or leases renewed during the agency. It further denies that at the time of making said contract plaintiff had any knowledge of any such pretended custom and denies that knowledge thereof was conveyed to him by defendants prior to the commencement of suit, and denies that prior to November 1, 1920, defendants ever claimed the existence of any such pretended custom, and denies that such pretended custom was a part of the contract mentioned and that there is anything due from plaintiff to defendants.

There was a trial before the court without a jury in the course of which the parties stipulated that the item of $90.72 for cash expenditures mentioned in the amended claim of set-off was properly charged against plaintiff; also that there is no dispute between the parties except as to whether or not defendants were entitled to charge a commission on rentals to become due on leases either made or renewed by defendants which had not expired at the time plaintiff terminated the agency contract; that the only questions to be tried are, whether or not there existed at the time of mak-

ing the contract of agency between the parties a general custom among real estate agents whereby agents were entitled to charge a commission of 2½ per cent on rentals for the unexpired terms of leases made or renewed by agents in cases where the agency is terminated by the owner without the consent of the agent during the pendency of such leases, and whether such custom, if any, is binding on plaintiff and applies to the agency contract between the parties. It was further stipulated that if defendants are entitled to compensation for such uncollected rentals, the amount of the commission thereon is $391.63, and that after charging plaintiff's account with $90.72 for the expenditures above mentioned defendants had in their possession the sum of $280.68, leaving a balance due to them under that theory of $110.95; and further, that if the plaintiff is entitled to recover the judgment should be for $280.68, and if defendants are entitled to recover under their claim of set-off the judgment should be for $110.95. There was a finding and judgment in favor of defendants for the sum of $110, from which plaintiff has appealed. Plaintiff insists that the proof does not show the existence of any custom or usage whereby defendants were entitled to charge a commission for the uncollected rentals during the unexpired portion of leases renewed by them in cases where the ownership withdraws the property from the agent the business of collecting the rentals.

The evidence shows that the business relations between the parties had their inception in a conversation between plaintiff and J. E. Clark, the manager of the branch office of the defendants. Both of these gentlemen testify that in April, 1918, plaintiff came to defendants' office on Seventy-fifth street in Chicago and inquired as to defendants' rates and terms for managing real estate. Mr. Clark told Mr. Kelly that the commission charged was 3 per cent. Mr. Kelly thereupon stated that another broker would handle the

business for 2½ per cent, but Mr. Clark insisted that a commission of 3 per cent was the only rate that would be considered by defendants. The parties again met at the same place later in the month and thereupon they agreed that defendants should handle plaintiff's buildings and collect the rentals on the basis of a commission of 3 per cent. Nothing else was said at these meetings. Leases were then turned over to defendants covering the property at 2631-33 Seventy-fourth street and at 7445-47 Coles avenue. The buildings were completely leased and fully occupied on May 1, 1918. The property on Coles avenue was sold by plaintiff some time thereafter and the management of that property was withdrawn from defendants. No charge was made by defendants for commissions upon the uncollected rentals for the unexpired terms of the leases on that building, the custom or usage for which defendants contend not being invoked in that case.

In view of this evidence we conclude that there was an express agreement between the parties whereby plaintiff agreed to pay to defendants a commission of 3 per cent upon rents collected by them as agents for plaintiff. This agreement was oral and resulted from the conversations between Messrs. Clark and Kelly above set forth, in which no mention was made as to the payment of any commission upon uncollected rentals for the unexpired portion of leases renewed by defendants, in the event of the withdrawal of the property from the agency contract, and nothing was said as to the existence of any custom or usage regarding the payment of such commission on uncollected rentals.

Defendants sought to prove the existence of the alleged custom or usage by the testimony of two expert witnesses, one of whom testified that he had been in the real estate business more or less for about 20 years and exclusively for the last 7 or 8 years and was familiar with the general customs recognized among real estate renting agents; that there was a

general custom in Chicago for more than 10 or 15 years prior to this time, and at all times thereafter, to the effect that when an agreement was made between an owner and agent providing that the agent should rent certain property and make collections thereof, but not specifying the period of time during which the agency is continued, and the owner terminated the agency, the agent should receive from the owner as compensation for leases made and outstanding, 2½ per cent upon the aggregate amount of the rent subsequently to fall due under such leases and that this custom prevailed during the years 1918, 1919 and 1920. Upon cross-examination this witness stated that he could not mention an instance where such commissions had been charged 20 years ago or 15 years ago or 10 years ago, but that he did know of two instances during the preceding 5 years. The other expert witness, also engaged in the real estate business, testified to the same effect regarding the existence of the custom or usage, but was unable to state a single instance within his knowledge where the custom had been followed and admitted that he did not always observe the custom.

In an early case, the Supreme Court of this State held, in substance, that the proper office of a custom or usage in business is to ascertain and explain the intent of the parties. Such a custom must not be inconsistent with the terms of the agreement of the parties. The custom must be generally known and established and so well settled and so uniformly acted upon as to raise a fair presumption that it was known to both contracting parties and that their contract was made upon the basis of the existence of such a custom. The existence of a custom or usage of this kind cannot be established by proof of one instance, but must be shown to have been followed in an accumulation of instances. The custom ought to be proved to be so general, uniform and frequent as to warrant an inference that the party against whom it

is claimed had a knowledge of it and contracted with reference to it.  It should be established by the testimony of several witnesses and if it is a well-established usage or custom, it ought not to be difficult of proof by a number of witnesses.  It must have existed for a sufficient length of time to become generally known and to warrant a presumption that all contracts in the line of business to which the custom applies are made with reference to it.  *Bissell v. Ryan,* 23 Ill. 566. The rule established by this decision has been followed without exception in all subsequent cases to which our attention has been drawn.  A usage or custom to be binding must be so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances.  *Cleveland, C., C. & St. L. Ry. Co. v. Jenkins,* 174 Ill. 398.

While it may be true that real estate boards and renting agencies have sought to establish such a custom by their rules, yet the custom cannot be made applicable to plaintiff unless it is shown that he had actual knowledge of the existence of the custom or that he had had previous transactions or a course of dealing of such a nature that knowledge on his part of the existence of the custom might be presumed. When the custom of a particular trade, business or profession is involved, its existence cannot be regarded as having entered into the contracts of others not engaged in such trade, business or profession unless such persons have had actual knowledge of the custom or are shown to have been previously engaged in transactions where the custom has been recognized. The rule that a usage or custom affects contracts, generally rests upon the theory that the parties in making the contract had such custom in their minds and

stipulated with reference to it, thereby making it a part of their contract. When existence of the custom has been proved, it has the force of law within the sphere where established and enters into the contracts of those within that sphere who have knowledge of its existence. A presumption of such knowledge may be shown by facts or circumstances. The custom must be uniform within some sphere and must have been long established and generally acquiesced in. Customs owe their origin to common consent and lack of uniform acquiescence in them shows the want of such consent. *Swern v. Churchill,* 155 Ill. App. 505; *Klaub v. Vokoun,* 169 Ill. App. 434.

Applying these rules to the evidence in the case at bar, we are of the opinion that it fails to establish the existence of the custom or usage on which defendants rely. The contract between the parties was express and definite. Plaintiff did not make his agreement with defendants with the intention of being governed by any such custom as is claimed by defendants.

The judgment of the municipal court is reversed with a finding of facts and judgment is entered here in favor of plaintiff for the sum of $280.68, being the amount wrongfully withheld by defendants from plaintiff.

*Reversed with finding of facts and judgment here for $280.68.*

GRIDLEY, P. J., and BARNES, J., concur.

Finding of facts. We find as ultimate facts in this case that there was a specific contract between the parties to this suit whereby defendants agreed to accept as compensation for rent collections made by them as agents for plaintiff a commission of 3 per cent upon the amount of such collections, and that there was no such custom or usage as that upon which defendants rely.